IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SEAN DARNELL JEFFRIES,          )
                                )
                Petitioner,     )
                                )
        v.                      )        1:15CV814
                                )        1:11CR127-1
UNITED STATES OF AMERICA,        )
                                )
                Respondent.     )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This matter is before the court on Petitioner's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. (Doc. 262.) The Government has filed a response (Doc. 280), and Petitioner filed a reply (Doc. 291). The parties have filed affidavits, and the court held an evidentiary hearing on August 24, 2017. Thereafter, the parties filed post-hearing briefs. (Docs. 325, 328, and 332.) For the reasons stated below, Petitioner's motion will be granted in part and denied in part.

## I.    BACKGROUND

On April 25, 2011, a federal grand jury charged Petitioner in a two-count indictment with possession with intent to deliver cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. 1.) Attorney William S. Trivette was appointed to represent Petitioner. On May

24, 2011, however, Petitioner retained attorney Andy Patrick Roberts, and Trivette was discharged.[1]

On May 31, 2011, and August, 30, 2011, the Government filed two superseding indictments, adding three co-defendants and ultimately charging Petitioner with conspiracy to distribute 280 grams or more of cocaine base and to possess 5 kilograms or more of cocaine hydrochloride with the intent to manufacture cocaine base in violation of 21 U.S.C. § 846 (Count 1); possession with intent to distribute 11.5 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count 4); and possession of firearms, including a 12-guage "Street Sweeper" shotgun, a destructive device, in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(a)(i) and (c)(1)(B)(ii) (Count 5). (Doc. 43.) In 2012, following a twelve-day trial, a jury convicted Petitioner on all three counts, although it found that he did not know of the characteristics that rendered the Street Sweeper a "destructive device" as defined in the statute. (Doc. 109.) At sentencing, the court varied downward several offense levels and imposed a sentence of imprisonment of 360 months as follows: 300 months as to Count 1, 240 as to Count 4, to run concurrently with

---

[1] In a sworn statement, Trivette testified that he was appointed on April 27 and discharged on May 24, 2011. (Doc. 280-1 at 1.) However, Trivette was not formally appointed until May 2, 2011. (Doc. 3.) Roberts appeared on behalf of Petitioner on May 24, 2011 (Doc. 9), and the court issued an oral order permitting Trivette to formally withdraw as counsel on June 8, 2011.

Count 1, and 60 months as to Count 5, to run consecutive to Counts 1 and 4. (Doc. 164 at 2.) Attorney Robert L. McClellan was appointed to represent Petitioner on appeal. (Doc. 209.) Following appeal, the Fourth Circuit affirmed. (Doc. 236.)

Petitioner brings his present motion on three grounds, each charging ineffective assistance of counsel. First, he claims Trivette both failed to accept a plea Petitioner claims the Government made as well as failed to advise him to cooperate with the Government; and that Roberts failed to communicate acceptance of a plea offer and failed to advise Petitioner and keep him properly informed as to ongoing plea negotiations. (Doc. 263 at 10-14, 19-20.) Second, Petitioner claims that Roberts failed to object to the use of an incorrect version of the United States Sentencing Guideline Manual for his sentencing. (Id. at 14-17.) Finally, Petitioner claims that McClellan failed to pursue the foregoing guideline claim on appeal. (Id. at 17.)

Because of conflicting affidavits by Petitioner, Trivette, and Roberts, the court held an evidentiary hearing on Petitioner's claims on August 24, 2017. All three witnesses testified. Now that Petitioner's motion is fully briefed, it is ripe for decision.

## II. ANALYSIS

### A. Ineffective Assistance during Plea Bargaining

Petitioner first claims that his attorneys were ineffective during the plea bargaining process. (Id. at 10-14.) The Supreme

Court has recognized a defendant's right to effective counsel during plea negotiations. Missouri v. Frye, 566 U.S. 134, 147 (2012). To succeed on such a claim, "a petitioner must establish that (1) counsel's performance was deficient and (2) there is a reasonable probability that the deficiency prejudiced the defense." Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013) (citing Strickland v. Washington, 466 U.S. 668, 691-92 (1984)).

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Merzbacher, 706 F.3d at 363 (quoting Strickland, 466 U.S. at 688.) In considering whether counsel's performance was deficient, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, in order to avoid the distorting effects of hindsight." Id. (quoting Yarbrough v. Johnson, 520 F.3d 329, 337 (4th Cir. 2008)). "To show prejudice from ineffective assistance of counsel in a case involving a plea offer, petitioners must demonstrate a reasonable probability that (1) 'they would have accepted the earlier plea offer had they been afforded effective assistance of counsel,' and (2) 'the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it . . . .'" Id. at 366 (quoting Frye, 566 U.S. at 147.)

In assessing the credibility of witnesses, the court may

4

consider "variations in demeanor and tone of voice." _Rahman v. United States_, No. 7:08-CR-126-D, 2013 WL 5222160, at *5 (E.D.N.C. Aug. 27, 2013) (quoting _Anderson v. City of Bessemer City, N.C.,_ 470 U.S. 564, 575 (1985)), _adopted by_ 2013 WL 5230610 (E.D.N.C. Sept. 16, 2013). However, "documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.'" _Id._ (quoting _United States v. Marcavage_, 609 F.3d 264, 281 (3d Cir. 2010)). "Additional considerations can include the witness's motive to lie and the level of detail in the witness's statements." _Id._ (citing _United States v. Wilson,_ 624 F.3d 640, 665 (4th Cir. 2010)). The Fourth Circuit has recognized that a Petitioner's "self serving assertion that he would have accepted the plea is . . . 'the type of testimony . . . subject to heavy skepticism.'" _Merzbacher_, 706 F.3d at 367 (quoting _United States v. Day,_ 969 F.2d 39, 46 n.9 (3d Cir. 1992)).

Framed with this statement of the legal principles, Petitioner's claims will be addressed in turn.

### 1. Claims Involving Attorney Trivette

During Trivette's limited appointment of less than one month, Petitioner was the sole defendant named in a two-count indictment charging possession with intent to distribute 11.5 grams of cocaine base (Count 1) and possession of two firearms – a 9mm Hi-Point

handgun and a 10mm Smith & Wesson – in furtherance of a drug trafficking crime. (Doc. 1.) Shortly after the conclusion of Trivette's representation, the Government filed a superseding indictment charging Petitioner with the additional counts of conspiracy to distribute 280 grams or more of cocaine base (object one) and to possess 5 kilograms or more of cocaine hydrochloride with the intent to manufacture cocaine base (object two), and possession of a 12-gauge "Street Sweeper" shotgun, which carried a possible mandatory minimum 30-year sentence. (Doc. 10.) Petitioner blames Trivette for his being exposed to a superseding indictment. Initially, Petitioner contended that Trivette failed to communicate Petitioner's acceptance of a purported Government plea offer. (Doc. 263 at 13, 18.) Following the evidentiary hearing, however, Petitioner characterizes his claim as Trivette failing to properly advise him to accept a "favorable plea offer" from the Government and to cooperate with the Government's investigation and prosecution to avoid the superseding indictment. (Doc. 325 at 10-11.)

At the evidentiary hearing, Petitioner testified that Trivette first met with him on or around May 3, 2011, and discussed a potential plea offer from the Government that would entail pleading guilty to the two-count indictment for a possible 10-year sentence. (Doc. 324 at 78-79.) According to Petitioner, he told Trivette during this first meeting that he wanted to plead guilty

to the two-count indictment. (Id. at 92; Doc. 263 at 18.)
Petitioner testified that Trivette handed him a three-page letter
dated May 1, 2011, that outlined the charges against him, the
criminal adjudicative process, and some general advice about their
relationship and Petitioner's rights. (Doc. 324 at 78-79; Pet'r's
Ex. 1.) According to Petitioner, Trivette said that the
Government's plea offer was "5 years for Count One and 5 years for
Count Two for a total of 10." (Doc. 324 at 79.) Trivette then
noted in the letter that any sentence on the gun charge would be
"consecutive" and initialed the letter, Petitioner said. (Id.)
Trivette said, "10 years doesn't sound that bad." (Id. at 78.)
Petitioner maintains that he read the letter. (Id. at 81.) But
he claims that Trivette never explained what cooperation with the
Government would entail (only that "the Government feels there's
a bigger picture, you know more, but we never went into it"), what
sentence he might get if he lost at trial or was superseded with
a new indictment, what sentencing range would apply under the
Sentencing Guidelines, or the concept of acceptance of
responsibility. (Id. at 78-81.)

Petitioner contends that at no time did Trivette ever inform
him that a superseding indictment would be filed if he did not
accept the Government's offer. (Id. at 95-96.) He further
testified that Trivette never advised him to cooperate with the
Government and failed to explain what cooperation would entail.

(Id. at 79-80.)   Had Trivette done so and provided information regarding his sentencing exposure, Petitioner testified, he would have agreed to cooperate and accepted the Government's plea offer. (Id. at 82.)

Petitioner claims that while Trivette never reviewed his whole letter with him, he relied on a portion of the letter that provided:

> SUBSTANTIAL ASSISTANCE.  You can try for a cut in your sentence by providing information or assistance to the government that substantially assists in the investigation or prosecution or another person.  Be aware, however, that the majority of defendants who provide information in our area do not get a sentence reduction because the government does not deem their assistance as useful.  Do not cooperate with an expectation for a reduction, only a slight hope.  I do not recommend you try to cooperate unless I get information from the U.S. Attorney or a law enforcement officer that they think you may be able to help yourself. I wish that I had better news on this topic, but I don't.

(Pet'r's Ex. 1 at 3 (emphasis added); Doc. 324 at 81-82.)  After reading this, Petitioner testified, he "saw that cooperation didn't necessarily mean that anything would happen for me."  (Id. at 82.)   Petitioner now contends that he did not accept the Government's plea offer because he was either not encouraged, or actually dissuaded, by Trivette from doing so.  (Doc. 325 at 8-11; Doc. 332 at 2.)  As a result, he contends, he was subjected to the additional charges in the superseding indictment.

This contention is plainly at odds with Petitioner's initial position in this case.  At the outset, Petitioner maintained that

8

he instructed Trivette to accept what he understood was a Government plea offer without any mention of cooperation, and that Trivette's failure to do so resulted in the new indictment. (Doc. 263 at 18.) During the evidentiary hearing, however, Petitioner conceded on cross-examination that in any plea "the Government would be seeking [his] cooperation." (Doc. 324 at 92; see also id. at 95.) Further, he admitted that while he says that Trivette never explained cooperation to him, he "knew what that meant," including Petitioner's explanation of what he had done, who he sold drugs with, and where he obtained the drugs. (Id. at 92-93.) He also conceded that he never agreed to cooperate during the course of Trivette's representation or indicated an interest in doing so. (Id. at 96.) Thus, Petitioner appears to have changed his contention from one of having directed Trivette to accept some type of plea offer, to faulting Trivette for not having persuaded him to accept a Government plea offer requiring his cooperation.

The court does not find Petitioner credible. This determination is made based on Petitioner's tone, demeanor, and appearance during the hearing, as well as the inconsistencies in his testimony. Petitioner's own testimony undermines his claim.

While Petitioner claims that he was never advised as to what type of sentence he would face, Trivette's letter clearly provides that the statutory sentencing exposure of count one was 5 to 40 years and as to count two was 5 years to life, consecutive.

9

(Pet'r's Ex. 1; Doc. 324 at 94-95.)  To the extent Petitioner claims Trivette told him he would be exposed to only 5 years on each count, the court finds such a claim incredible.  In addition, Petitioner's claim that he was unaware that a superseding indictment would be filed contradicts his own previous sworn statement that he was informed of this possibility as early as May 3, 2011.  (Doc. 291-1 at 1 ("The only thing I was informed surrounding the first indictment while in Court on May 3, 2011, was [i]f I take the 10 years I won't be charged with the "Street Sweeper" gun which carried a mandatory minimum of 30 years.").)

Further, Trivette's testimony, which the court finds credible, demonstrates that Petitioner's claims are meritless. Trivette began his career in 1978 and served as a federal public defender for 20 years, handling approximately 1,500 federal matters.  (Doc. 324 at 8.)  His testimony shows that there was no written plea offer and that he advised Petitioner that any potential offer from the Government would be contingent on his cooperation and that his failure to cooperate would likely result in a superseding indictment with a conspiracy charge and an additional gun, the Street Sweeper, on the 924(c) count.  (Id. at 15, 32-33; Doc. 280-1 at 3.)

Trivette first met with Petitioner on May 3 to review his standard engagement letter and to relay to him that the Government had expressed an interest in negotiating a plea deal in exchange

for his cooperation. (Doc. 324 at 31-32.) Trivette testified that Petitioner stated he would plead to the current indictment, but refused to cooperate. (Id. at 32.) Trivette communicated Petitioner's position to the Government, but the Government rejected it, restating its position that any plea offer was contingent on Petitioner's cooperation. (Id. at 22-23; Doc. 280-1 at 3.)[2]

Trivette said he again met with Petitioner on May 7 to relay the Government's position that any deal was contingent on his cooperation and that he believed the Government would seek a superseding indictment with more serious charges should he fail to do so. (Doc. 324 at 32-33; Doc. 280-1 at 3.) According to Trivette, it was a preliminary stage of the plea negotiations and "whether or not this constitutes an offer, I'll leave to the Court or others . . . . the crux of what the conversation was, and [the Assistant U.S. Attorney] told me, if he did not [cooperate], there would be additional charges." (Doc. 324 at 22-23, 35 ("I don't know if I can say that that was a plea offer . . . . but it was does he wish to cooperate and, if not, there would be a superseding indictment.").[3]

_____

[2] Thus, even if Petitioner sought to plead guilty to the initial indictment without the benefit of a plea agreement, it would not have prevented the Government from charging Petitioner with the additional counts in the superseding indictment. Only Petitioner's cooperation would have done so.

[3] In the pre-hearing affidavit, Trivette stated, "[t]here was no specific

While Trivette could not recall the specifics of his conversations with Petitioner, he testified that he viewed the Government's interest in a plea deal as a good opportunity and would have ensured that his client "under[stood] the ramifications of not – of going to trial and not cooperating." (Id. at 15.) According to Trivette:

> I knew that any time the Government indicates at an early stage, and it rarely happens, that they're interested in talking to someone, that is an opportunity, and so I would have conveyed that to him. How strongly did I try to persuade him, I can't tell you today. I just don't remember, but I know that I would have conveyed his options.

(Id. at 15-16.) In addition to informing Petitioner of the statutory maximum sentence of 40 years as to Count One, Trivette testified that he informed Petitioner that he was facing a sentencing exposure of 5 years to life under Count Two of the original indictment. (Id. at 34-35.) He could not recall whether he performed a calculation of the Sentencing Guidelines under the current indictment, given the early stage of the case. (Id. at 16-18.) He similarly testified that he would not likely have given Petitioner a guidelines estimate of his conspiracy charge under a potential superseding indictment because it was dependent on the amount of drugs charged in it, which had not been filed. (Id. at

_____

offer of what the Government would do in return for Defendant's cooperation but I would have viewed this as a good opportunity for Defendant." (Doc. 280-1 at 2.) The Government maintains that no formal plea offer was made during the course of Trivette's representation. (Doc. 328 at 14 n.3.)

36-37.)

During the course of his representation, Trivette testified, Petitioner was "quite firm" in his position not to cooperate and never indicated a willingness to do so. (Id. at 22, 28.) Trivette told Petitioner that cooperation would require him to be completely truthful, but he could not recall whether he provided a further explanation of other aspects of cooperation, such as a proffer session, the value of corroborating evidence, or acceptance of responsibility under the guidelines. (Id. at 23-24.) As noted above, however, Petitioner conceded he was aware of the basics of what his cooperation would entail. (Id. at 92-93.)

Late in this case, Petitioner began to place weight on the statement in Trivette's letter that a defendant should not expect a sentence reduction in exchange for cooperation because most do not get one in this district. Petitioner now claims that he did not accept a Government plea because he relied on this letter from Trivette. (Doc. 325 at 8-9.) This is of course plainly contrary to Petitioner's initial claim that he directed Trivette to accept a guilty plea as early as their first meeting. (Doc. 263 at 18.) Moreover, Trivette testified that "this paragraph in my form letter was superseded by my conversation with him about the Government wishing to cooperate" and stated that he was "confident that I conveyed to him that the Government wished to have this cooperation, which is a different situation." (Doc. 324 at 22.)

The court finds that Petitioner has failed to establish that Trivette's performance fell below an objective standard of reasonableness. The credible testimony and record evidence indicate that Trivette communicated the Government's interest in a potential plea offer to Petitioner that it would have required Petitioner's cooperation, as well as the potential consequences of not pursuing further plea negotiations with the Government. There is simply no credible evidence that a formal plea offer was ever extended. See Frye, 566 U.S. at 145 (noting that "as a general rule, defense counsel has the duty to communicate formal prosecution offers to accept a plea on terms and conditions that may be favorable to the accused").

Between Trivette's explanation and Petitioner's own knowledge, Petitioner knew what cooperation with the Government would entail. Yet Petitioner remained "quite firm" in his decision not to cooperate throughout the course of Trivette's representation. (Doc. 324 at 28.) Therefore, any failure to explain some of the finer points of cooperation with the government would not be unreasonable under the circumstances. See Strickland, 466 U.S. at 691 ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.") And any claimed failure to provide an estimation of the guidelines would not amount to

ineffective assistance, given the disclosure of the statutory penalties and the speculative nature of any estimate at this early stage in the proceeding.

Petitioner likewise fails on the prejudice prong. He has not demonstrated a reasonable probability either that his offer to accept a plea without cooperation would have been accepted by the Government to prevent its filing of the superseding indictment or that, given his unwillingness to cooperate, he would have accepted a plea that required his cooperation. Quite the opposite. "The Fourth Circuit has explicitly recognized that the 'lack of definition' in a plea communication can make it 'substantially harder to determine it likely that a plea acceptable to [the defendant] would have been entered without the prosecution canceling it or the trial court refusing to accept it.'" Young v. United States, No. 2:09-CR-00223-01, 2016 WL 5496517, at *9 (S.D.W. Va. Sept. 29, 2016) (quoting Merzbacher, 706 F.3d at 370), aff'd, 685 F. App'x 181 (4th Cir. 2017). See also Cook v. United States, 613 F. App'x 860, 866 (11th Cir. 2015) (noting "the fact that plea negotiations never advanced to any level of specificity" weighs against a finding that the defendant would have agreed to a plea deal provided by the government); Ramirez v. United States, 751 F.3d 604, 608 (8th Cir. 2014) (holding petitioner failed to establish Strickland prejudice due to counsel's failure to notify him of government's interest in his cooperation where the evidence

indicated that defendant "received at most an informal plea offer" and the defendant "never expressed a willingness to cooperate or indicated that he possessed information that would benefit the government").

Here, Petitioner cannot establish Strickland prejudice where the evidence indicates he was not presented with a formal plea offer and never agreed to cooperate during the course of Trivette's representation. During the twenty-two days that Trivette represented Petitioner, the Government never made a formal plea offer. (See Doc. 324 at 35; Doc. 280-1 at 2.) This is consistent with Trivette's testimony that the Government was interested in a plea offer only if Petitioner would agree to cooperate, a condition Petitioner was unwilling to meet. (See Doc. 324 at 32-33.)[4] Thus, Petitioner fails to meet his burden of establishing a reasonable probability that a plea would have been entered that was acceptable to the Government and the court. Merzbacher, 706 F.3d at 370.

### 2. Claims Involving Attorney Roberts

Petitioner alleges that Roberts, too, was ineffective during the plea bargaining stage. Here, Petitioner also presents inconsistent claims.

Petitioner retained Roberts on May 24, 2011. (Doc. 9.)

---

[4] Even while Petitioner was represented by Roberts, he admitted, he never agreed to testify against co-defendant Alton Benn. (Doc. 324 at 96.)

Petitioner's affidavit stated that he retained Roberts because Trivette failed to relay his plea acceptance to the Government. (Doc. 263 at 18-19.)  During the evidentiary hearing, Petitioner testified that he retained Roberts because he was dissatisfied with Trivette's representation.  (Doc. 324 at 82-83.)  Petitioner testified that he told Roberts he was interested in a guilty plea and denied that he changed attorneys because he was not willing to plead guilty and cooperate with the Government.  (Id. at 83.) However, Roberts testified that he was retained "because, according Mr. Jeffries, previous counsel wanted Mr. Jeffries to take a plea deal against his wishes."  (Doc. 280-2 at 1.)  Of course, Roberts's statement, which the court finds credible, further undermines Petitioner's claim against Trivette.

Petitioner contends that Roberts failed to apprise him of ongoing plea negotiations and to properly advise him to plead guilty instead of proceed to trial.  (Doc. 325 at 11-12.) Initially, he contended that Roberts failed to convey his direction to accept a plea to the superseding indictment, instead leaving the country during the week of July 11, 2011, without following through.  (Doc. 263 at 19.)  Now, he contends that Roberts was ineffective because he advised against accepting a plea, advice which Petitioner says he relied upon.  (Doc. 325 at 11-13.)  And while Petitioner initially contended he was only aware of the first plea offer (Doc. 263 at 20), he now contends there were two

separate plea offers – one prior to trial, and one during trial
(Doc. 325 at 12-13).  He maintains that he forewent them both in
reliance on Roberts's advice of success at trial and the fact that
Roberts "never attempted to persuade him to accept" the offer.
(Id.)

There is no dispute that the Government made a plea offer
prior to trial.  (Doc. 325 at 11.)  While Petitioner testified he
never saw the draft plea, the written agreement submitted by the
Government (Doc. 280-3) contemplated a plea to the conspiracy count
(count one), a dismissal of the substantive possession count (count
four), and the striking of the Street Sweeper destructive device
from the § 924(c) count (count five), which would have reduced the
mandatory 30-year minimum sentence exposure to a mandatory five-
year minimum instead.  (Doc. 325 at 11; Doc. 324 at 48.)[5]  Roberts
testified that, as before, the offer was contingent on Petitioner's
cooperation with the Government and also contained an appeal
waiver.  (Doc. 324 at 65-66; Doc. 280-3 at 5-6.)  Petitioner
contends that Roberts told him it was a "20-year plea" "without
the Streetsweeper" but never gave him a copy.  (Doc. 324 at 85.)[6]
Roberts, on the other hand, says he actually gave Petitioner

---

[5] Petitioner incorrectly characterizes this as a 5-year maximum.  (Doc.
325 at 11.)

[6] In an affidavit, Petitioner characterized this offer as a "15 year plea
offer."  (Doc. 263 at 19.)  However, in another affidavit, he claimed
he rejected a separate plea offer made during trial "where [Roberts] may
have stated 20 years."  (Doc. 291-1 at 3.)

several copies and discussed the agreement with him as well. (Doc. 324 at 49, 68.)

While Petitioner swore in his affidavit that he directed Roberts to accept the plea offer (Doc. 263 at 19), he testified during the evidentiary hearing that Roberts never attempted to persuade him to accept the written plea offer but rather advised that "if all they had was Leonard Williams and Helen Grier, and he referred to Leonard Williams as a loser and Helen Grier as a crackhead, that we got good chance" at trial. (Doc. 324 at 85.) According to Petitioner, Roberts advised that "we have this case beat just off of the witnesses['] credibility alone" and further stated, "I'm not worried about this judge (Schroeder) making any bad rulings, he definitely don't want to piss me." (Doc. 291-1 at 2.)

This testimony contradicts one of Petitioner's affidavits. In it, he stated that Roberts informed him that he "was looking at a mandatory minimum term of 10 to Life" under the superseding indictment and "any sentence imposed for the weapons would run consecutive for 15 years." (Doc. 263 at 19.) He further claimed he told Roberts there was "no question about my guilt for my prior State Drug Case," that he "informed counsel Roberts that I'll accept the 15-year plea offer," and that Roberts said he would relay his acceptance to the prosecutor. (Id.) Petitioner contends that Roberts explained that his Sentencing Guidelines range would

be 135-168 months, plus 60 months for the gun charge. (Id. at 14.) Yet, Petitioner contends that Roberts failed to provide him with sufficient information to make an informed decision. (Id. at 12-13.)

Petitioner now acknowledges that Roberts informed him of a second plea offer based on similar terms during trial. (Doc. 325 at 12.) Petitioner testified that Roberts failed to advise him to accept that offer or explain the consequences he would face if convicted at trial. (Doc. 324 at 86-88.) He claimed that Roberts failed to provide him with an estimate of his sentencing exposure under the guidelines. (Id. at 85; Doc. 325 at 12.) Roberts also failed to advise him that this plea offer may not require cooperation, he said. (Doc. 324 at 87.) Had Roberts told him the Government had a strong case and advised that his guidelines could be as high as life if convicted, he would have taken the plea, Petitioner testified. (Id. at 86.) In choosing not to accept the plea agreement, he testified, he again relied on Roberts's advice that he had a good chance prevailing at trial. (Id. at 86-87.) As to this plea offer as well, Petitioner testified, he would have accepted it and cooperated had Roberts properly advised him to do so and adequately informed him of the risks of proceeding to trial. (Id. at 86-88.) In contrast, Roberts testified credibly that he never told Petitioner he could win the case but told him "he needed to plead. That would be his best shot at getting the least amount

of time." (Id. at 105.)

As to cooperation, Petitioner testified that in conversations with Roberts, he agreed to cooperate against "some people from Greensboro," but admitted that he never agreed to cooperate against any of the co-defendants named in his indictment. (Id. at 98-99.) This contradicts Petitioner's affidavit, in which he stated "I had no problem cooperating with the government against [co-Defendant Alton] Benn." (Doc. 291-1 at 3.) Petitioner conceded he sold drugs but denied any involvement in a drug conspiracy. (Doc. 324 at 91-92.) Nevertheless, he maintains, he would have pled guilty to the conspiracy charge "[a]s opposed to getting a life sentence." (Id. at 92.) He denied that he and his co-defendant, Benn, were childhood friends and testified that he met Benn for the first time when he moved to Greensboro in 2003. (Id. at 90.) He admitted that he knew Benn was involved in selling drugs, but he denied ever having sold drugs with him. (Id. at 91.)

As with his testimony involving Trivette, Petitioner is not credible as to the material allegations of his ineffective assistance claim against Roberts. Petitioner's claim is undermined by his own hearing testimony and prior statements. The court also finds the testimony of Roberts credible and credits it as to all material facts in dispute.

First of all, Petitioner's claims have morphed in inconsistent fashion throughout the duration of this case. His

21

claim that he directed counsel to accept a plea is not credible. Any plea before trial required his cooperation, which he made clear he was not willing to provide. Co-Defendant Benn was his friend. (Doc. 280-2 at 1.) Petitioner "expressly declined to accept the plea offer" made prior to trial. (Id.) While Roberts also kept Petitioner's parents informed, too, "at no point" during the course of the representation did Petitioner or his family inform Roberts that Petitioner desired to follow counsel's advice to accept the Government's plea offer. (Id. at 2.) Petitioner's self-serving statement that he would have accepted a plea and cooperated is further undermined by his own admission that he never agreed to cooperate against Benn. (Doc. 324 at 96, 98-99.)

Although Petitioner testified that Roberts failed to properly advise him of his sentencing exposure under the guidelines, Petitioner provided a sworn statement that Roberts informed him at the outset of his representation that he was subject to a statutory sentencing exposure of 10 years to life. (Doc. 263 at 19.) While Petitioner maintains he relied on Roberts's alleged statement that he had a good chance of prevailing at trial based on the perceived weakness of two Government witnesses, Petitioner conceded that he was aware of other incriminating evidence in his case, including his fingerprints on the firearms that were attributed to him as well as his previous guilty plea in a State court proceeding. (Doc. 324 at 102-103.) Petitioner further admitted that he wrote

a letter to Roberts following his sentencing hearing in which he stated, "[a]lthough the odds were stacked against us I was prepared for the outcome and I want to take the opportunity to thank you and your staff for the hard work and show of concern in my best interest."  (Doc. 280-2 at 3; Doc. 324 at 100.)

In addition, Roberts's credible testimony, based on his review of his file containing extensive contemporaneously-drawn notes and draft Sentencing Guideline calculations he performed for Petitioner, directly contradicts many, if not all, of Petitioner's claims.  Roberts, who has practiced law for fifteen years, testified that he discussed the written plea agreement with Petitioner and left copies of it with him.  (Doc. 324 at 49, 52, 68.)  He advised him of the guideline range, including the possibility of a life sentence should he choose to proceed to trial.  (Id. at 50-51, 54-55.)  He further advised him to accept the plea because he did not believe he could prevail at trial.  (Id. at 51, 105 ("I never told him I could win the case.  I told him he needed to plead.  That would be his best shot at getting the least amount of time.").)  Roberts further explained that Petitioner would have to speak truthfully about his activities and those of his co-defendants, and he outlined what cooperation with the Government would entail.  (Id. at 52-53.)

Roberts testified that he also advised Petitioner to accept a similar plea offer during the trial and advised him that it may

not require his cooperation. (Id. at 57-59.)[7] Roberts testified that Petitioner refused to accept the plea offers and never indicated that he would cooperate against Benn, even though Roberts advised him to do so on multiple occasions. (Id. at 55, 64.)

For all these reasons, the court finds that Petitioner failed to establish that Roberts's performance fell below an objective standard of reasonableness. The record evidence and credible testimony demonstrate that Roberts communicated all plea offers to Petitioner and provided him with adequate information to make an informed decision about whether to proceed to trial. The court finds Petitioner's self-serving testimony that he would have accepted the plea offers not to be credible. Based on these facts, the court concludes that Petitioner fails to establish the first prong of the Strickland analysis, and the court therefore need not reach the issue of prejudice.

## B. Ineffective Assistance at Sentencing

Second, Petitioner claims, and the Government concedes (Doc. 280 at 11-12), that his counsel was ineffective for failing to object to the use of an incorrect version of the United States Sentencing Commission Guidelines Manual for his sentencing. (Doc. 263 at 14-17.)

Petitioner was sentenced pursuant to the 2011 Sentencing

---

[7] However, Roberts testified, no formal offer was ever provided in writing. (Doc. 324 at 62.)

Guideline manual (Doc. 274-1 at 21, ¶ 68), which took effect on November 1, 2011. His last proven act in furtherance of the conspiracy that led to the charges took place on May 14, 2010. (Id. at 12, ¶ 35.) On that date, the 2009 manual was in effect. Petitioner was subject to two enhancements contained in the 2011 manual that do not appear in the earlier manual: a two-level enhancement for maintaining a premise for manufacturing or distributing a controlled substance, U.S.S.G. § 2D1.1(b)(12) (2011); and a two-level enhancement for committing the offense as part of a pattern of criminal conduct engaged in as a livelihood, id. § 2D1.1(b)(14)(E). (Doc. 274-1 at 21, ¶¶ 72, 73; Doc. 223 at 41-42.) His adjusted offense level was 45, which was reduced to 43 pursuant to Chapter 5, Part A of the 2011 manual. (Doc. 274-1 at 22, ¶¶ 77, 80.) This yielded a guideline range of life imprisonment as to Counts 1 and 4 and a mandatory sentence of five years as to Count 5. (Id. at 34.) Without both two-level enhancements, Petitioner's total offense level would have been 41, which, with a criminal history category II,[8] yields a guideline range of 360 months to life under both the 2009 and 2011 manuals.

---

[8] Petitioner contends that his criminal history category should have been I, not II, on the sole ground that there was "no evidence" he was on supervised release during the conspiracy. (Doc. 263 at 17.) The 2009 and 2011 manuals provide a guideline range of 324-405 months for a criminal history level of I. The Government correctly responds that Petitioner was serving a term of unsupervised probation when the conspiracy began. (Doc. 280 at 12 n.3; see Doc. 274-1 at 4, ¶ 3; id. at 23, ¶ 84.)

The Fourth Circuit has held that the Strickland test applies to both capital and noncapital sentencing proceedings. United States v. Conner, 456 F. App'x 300, 304 (4th Cir. 2011) (citing Glover v. United States, 531 U.S. 198, 202-04 (2001)). Courts have considered the ABA's Criminal Justice Standards in determining whether counsel's representation was objectively reasonable. Id. (citing Wiggins v. Smith, 539 U.S. 510, 524 (2003)). "The ABA's Criminal Justice Standards . . . indicate that defense counsel in a noncapital sentencing proceeding should (1) promptly investigate the circumstances and facts relevant to sentencing, (2) present the court with any basis that will help achieve an outcome favorable to the defense, and (3) supplement or challenge information provided in any presentence report." Id. (citing ABA Criminal Justice Standards 4-4.1(a), 4-8.1(b)). To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Curtis, 360 F. App'x 413, 414 (4th Cir. 2010) (quoting Strickland, 466 U.S. at 691-92).

The 2011 Sentencing Guidelines Manual provides that the court shall use the manual in effect on the date of sentencing. U.S.S.G. § 1B1.11(a) (2011). However, if doing so would violate the Constitution's Ex Post Facto Clause, "the court shall use Guidelines Manual in effect on the date that the offense of

conviction was committed." Id. § 1B1.11(b). Because use of the 2011 manual resulted in a retrospective increase in Petitioner's guidelines range from what would have been calculated under the 2009 manual, application of the 2011 manual violated Petitioner's constitutional right against ex post facto punishment. Peugh v. United States, 133 S. Ct. 2072, 2084 (2013); United States v. Lewis, 606 F.3d 193, 199 (4th Cir. 2010). Counsel's failure to object to the calculation of the guidelines using the 2011 manual was therefore objectively unreasonable.

Even though the court ultimately chose to vary downward and impose a sentence at the low end of the proper guideline calculation (360 to life), the court, based on its familiarity with the facts of the case and Petitioner's sentencing, finds that Petitioner has met his burden of demonstrating a reasonable probability that he would have received a lower sentence, but for counsel's deficient performance. Cf. United States v. Perez-Gonzalez, 593 F. App'x 191, 194 (4th Cir. 2014) (finding Strickland prejudice where the court imposed a sentence that exceeded the Sentencing Guidelines when properly calculated). Therefore, the court finds that Petitioner is entitled to be resentenced. At the resentencing, the court will consider Petitioner's argument that the court should reduce his sentence two offense levels pursuant to retroactive guideline amendment 782. (Doc. 291 at 7.)

## C. Ineffective Assistance on Appeal

Petitioner finally contends that his appellate counsel, McClellan, was ineffective for failing to challenge the calculation of his Sentencing Guideline range on appeal. Having granted Petitioner's request for relief based on his claim of ineffective assistance at sentencing, Petitioner's claim of ineffective assistance on appeal is denied as moot.

## III. CONCLUSION

For the reasons stated herein,

IT IS THEREFORE ORDERED that Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 262) is GRANTED as to Petitioner's ineffective assistance claim directed to the use of the 2011 Sentencing Guidelines manual during sentencing and is otherwise DENIED. Petitioner's sentence is VACATED, and this matter shall be scheduled for resentencing. Petitioner remains in custody, and the United States is directed to produce Petitioner for the resentencing hearing. The Probation Office is directed to prepare a Supplement to the Presentence Investigation Report in advance of the hearing.

Finding neither a substantial issue for appeal concerning the denial of a constitutional right affecting the conviction nor a debatable procedural ruling, a certificate of appealability is not issued.

/s/    Thomas D. Schroeder
                                        United States District Judge

January 2, 2018